[Civ. No. 5451.   Fourth Dist.   July 3, 1957.]

MARIE H. OERTEL, Appellant, v. JAMES S. COPLEY, Respondent.

Sherwood Roberts for Appellant.

Gray, Cary, Ames & Frye for Respondent.

MUSSELL, J.—This is an action in which plaintiff seeks a mandatory injunction to compel defendant to remove a fence erected on a portion of plaintiff's land and to enjoin defendant from in any manner interfering with plaintiff's use of her property. The trial court denied injunctive relief, awarded plaintiff the sum of $275 and decreed that defendant had the right, conditional upon payment of said sum, to continue to enclose, landscape and improve the property described in the judgment. Plaintiff appeals from the judgment.

Plaintiff and her husband were at all times here involved the owners of Lot 10 and a portion of Lot 11 of the Muirlands subdivision in La Jolla, San Diego County. This lot has a frontage on Muirlands Drive and the north end of said lot joins Lot A of said subdivision. Lot A consists principally of a large canyon, having steep and precipitous sides and containing approximately 173,560 square feet. On April 13, 1951, plaintiff entered into a contract and escrow instructions wherein she agreed to buy said Lot A from the Tavares Construction Company, owner of said lot, and deposited the purchase price of $5,000 cash on that date. She obtained a deed to the lot, dated April 17, 1951.

On January 25, 1951, defendant purchased Lot 1 in Block 12 of the Muirlands Subdivision from one Alton M. McClennan and the deed therefor, dated on said date, was recorded on February 27, 1951. Defendant's Lot (1) is situated across the canyon (Lot A) and to the north of plaintiff's residence on Lot 10. A portion of Lot A, containing approximately 655 square feet and consisting of an approximate quadrangle "having an average depth of 12 feet, lying lengthwise along a steep precipice a distance of approximately 60 feet," adjoins defendant's lot and is the property involved herein. This area is on substantially the same level as defendant's lot and is separated from the remainder of Lot A by said steep pre-

cipice and is inaccessible except by crossing defendant's lot or climbing the precipice.

After obtaining his deed to Lot 1, defendant remodeled his residence thereon by additions thereto. He put in a garage and public parking area and relandscaped the property. Desiring to construct a play area, for his small children, adjacent to the patio of his house and between it and the edge of the canyon, and to fence in the area involved herein, he requested his real estate agent, Mr. Mackenzie, to find out who owned the 655 square feet involved. Mr. Mackenzie informed him that Mr. Tavares was the owner of this property. Either Mr. Mackenzie or defendant then talked to Mr. Tavares, who promised to give the defendant a deed to the land involved. Defendant then proceeded to fence his entire lot, including the area involved. The cost for the entire fencing job was $862.31 for 540 feet but the amount of the bill applicable to the enclosed portion of Lot A was not determined. It was stipulated that the contractor would testify that the work was completed April 19, 1951, and that it was probably about a two-week job; that he could not give the exact date of commencement but it was either the last of March or the first of April; "that within two or three days of the starting of it they would have to have been doing work actually on the ground involved in this case and that such work would be there on April 13, 1951."

About the time plaintiff acquired Lot A, Mr. Mackenzie wrote a letter to Mr. Carl Tavares, asking him for a deed to the portion of Lot A included within the fence. In this connection Mackenzie testified "I think Carl called me up when he got my letter and he said, 'I'm sorry, Bill. I forgot all about this deal. I've sold that property.' And I said that I was crushed over the situation, and he said, 'Don't worry.' He said, 'I'm sure that you can make a similar arrangement with the new owner.' "

On May 2, 1951, Mackenzie wrote a letter to plaintiff informing her that Tavares had agreed to deed the strip of land involved to Mr. Copley and had instructed him (Mackenzie) to draw up the necessary papers. Mackenzie enclosed a form of deed for plaintiff to sign transferring this property to Copley. However, plaintiff was unwilling to make the requested transfer and this action followed.

Appellant argues that defendant James S. Copley failed to prove facts sufficient to justify the court in denying an injunc-

tion to remove the portion of the fence encroaching on plaintiff's land. This contention is without merit.

In *Christensen* v. *Tucker*, 114 Cal.App.2d 554, 559 [250 P.2d 660], the court, in discussing the rule applicable in encroachment cases, stated the rule to be that where the encroachment does not irreparably injure the plaintiff, was innocently made, and where the cost of removal would be great compared to the inconvenience caused plaintiff by the continuance of the encroachment, the equity court may, in its discretion, deny the injunction and compel the plaintiff to accept damages. And in *Wright* v. *Best*, 19 Cal.2d 368, 386 [121 P.2d 702], a water pollution case, the court said:

"But the respondent asserts a right to pollute the creek from the entire Ruby Mine, relying upon the equitable doctrine of the 'balancing of the conveniences.' Under this doctrine, a court of equity may deny injunctive relief and relegate the plaintiff to his remedy at law, if the benefit resulting to him from the granting of the injunction will be slight as compared to the injury caused the defendant thereby. [Citations.] Despite a proper showing in other respects of a right to injunctive aid, if a plaintiff is merely seeking to protect a technical and unsubstantial right, and the issuance of the injunction will bring no actual advantage, it may be properly refused where to do otherwise would result in unusual hardship to the defendant or the public."

In the instant case, plaintiff, when testifying as to the reason she purchased Lot A, stated:

"Well, we purchased it to keep the canyon intact and that nothing could prevent our view, our nice view across there, and this fence that has gone up is rather unsightly to us and has spoiled it more or less. . . . We purchased it to keep it beautified and we are keeping it that way so that it can't be used by other people."

The evidence does not indicate that plaintiff's view across the canyon was prevented by the erection of the fence and if the fence were moved back to defendant's lot line, it appears that it would still be visible to her.

The report of the appraiser filed herein was that the market value of the portion of Lot A enclosed by defendant's fence, on September 15, 1954, was the sum of $30; that the severance or consequential damage by reason of the severance or separation of said portion of Lot A from the remainder of Lot A would be nil; that the lot is continuously crumbling and fall-

ing away, and that the "part severed" will within a matter of a few years become part of the canyon.

There was evidence that, considered as part of defendant's Lot 1, the area would have had at the time of its enclosure by the defendant the value of $219 and that at the time of the trial, this figure would have increased to $275. The trial court found in this connection that the property involved, taken by itself, has no market value, and considered as a part of Lot A, has a value of $30, and that the actual injury to plaintiff from the occupation of said property by defendant and the maintenance of said enclosure and improvements does not exceed the said sum.

■ There is ample evidence that the encroachment was innocently made by the defendant. He obtained permission from the then owner of Lot A to build the fence and improve the property and understood he was to receive a deed from Mr. Tavares for it. Under the circumstances shown, the defendant was not a wrongdoer. He erected his fence in good faith, relying on the promise that a deed to the property would be executed and delivered to him. There is evidence that the hardship to the defendant by the granting of the injunction is greatly disproportionate to the hardship caused plaintiff by the continuance of the encroachment. While there was evidence that the cost of removing the fence would be approximately $75, the defendant had made valuable improvements on his lot and the disputed area was improved and fenced in as a play area, for his children, adjoining the patio of the house.

The trial court found:

"By reason of the steep precipices between the portion of said Lot A enclosed by defendant and the remainder of Lot A it would be dangerous to occupy Lot 1 as a residence without the maintenance of a fence or barrier and relocating the fence so as not to enclose any portion of Lot A would far exceed the market value of the said portion of Lot A. Such removal and relocation would damage and destroy the improvements placed thereon by defendant and deprive defendant of the use thereof. Both the cost of removal and the injury to the defendant by reason thereof would greatly exceed and be completely disproportionate to any possible injury to the plaintiff from occupancy of the said property by the defendant and the maintenance of the said enclosure and improvements and would greatly exceed and be completely disproportionate

to any benefit to her from such removal or from the granting of any relief sought by her in this proceeding.''

These findings are supported by the record and justify the trial court in denying the injunction under the rules announced in the cases herein cited.

The judgment provides that plaintiff recover from defendant the sum of $275 and it was decreed that defendant, his heirs and assigns have the right, conditional upon payment of said sum, to possess the disputed area and to continue to enclose it. The judgment, in effect, granted an easement to the defendant and the title to the disputed area is not by it transferred.

In view of what we have heretofore said, it is unnecessary to pass upon the question of estoppel, argued in appellant's opening brief.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.