358 So.2d 234 (1978)
GASPARILLA INN, INC., Appellant,
v.
SUNSET REALTY CORP., Appellee.
No. 77-1283.
District Court of Appeal of Florida, Second District.
May 3, 1978.
*235 Howard S. Rhoads of Allen, Knudsen, Swartz, DeBoest, Rhoads & Edwards, P.A., Fort Myers, for appellant.
Robert G. Jacobson of Farr, Farr, Haymans, Moseley & Odom, Port Charlotte, for appellee.
GRIMES, Acting Chief Judge.
This is an appeal from the denial of a request for mandatory injunction and a cross-appeal from the award of monetary damages in lieu thereof.
In 1969 the parties to this suit each owned one half of an island situated between a navigable bayou on the west and Charlotte Harbor on the east. Appellee owned the north half of the island and appellant the south half. Appellee wanted to provide vehicle access to its part of the island over a twelve foot high bridge across the navigable bayou. Since this would block the bayou to boat traffic, the appellee was required to build a canal across its half of the island in order to provide navigable access to Charlotte Harbor.
After obtaining the appropriate permits, the appellee caused the canal to be dug. The canal which ran east and west was located entirely within the boundaries of the appellee's land, but the south shoreline of the canal was located only fifteen feet from the common property line between appellee and appellant. The appellee later built a seawall along the north shoreline but the south shoreline remains unprotected. Part of appellant's golf course is located on its land lying south of the canal. Eventually the fifteen foot buffer south of the canal eroded away, and the canal's southern shoreline began to creep onto appellant's land at various points.
Appellant filed suit against appellee seeking a mandatory injunction to require appellee to prevent further erosion of appellant's land and damages for injuries to the land caused by the canal. Prior to trial the appellant dropped its claim for past damages. Following the taking of testimony and a view of the property, the court concluded that in certain areas the appellee's canal would cause water to trespass on the appellant's land and that the erosion caused by the trespass would be of a continuing nature and require remedial action. Paragraphs 5 and 6 of the final judgment stated:
5. In the Court's opinion, rather than mandatorily requiring construction of preventative devices (which would be one form of appropriate relief in this case but which would require subsequent court administration and supervision), the Court has arrived at a monetary equivalent to the relief requested for those areas where remedial attention is needed. That is, the Court finds that the monetary equivalent to the construction necessary to once and for all abate and terminate the erosion problems caused by the trespass is $36,000.00.
6. The Court finds from the testimony (which included expert projections and expert opinions of future erosion problems) that the erosion will continue in those areas designated in paragraph seven and will not continue in the areas not specifically designated in paragraph seven. The total area litigated is the northerly boundary of the island from the northwest corner to the northeast corner.
Thereafter, by reference to certain exhibits the court endeavored to designate those areas where the erosion would continue. The judgment provided that the award when paid would once and for all settle the *236 dispute existing between the parties and specified that if the $36,000 was not paid within twenty days a mandatory injunction would be entered for construction of preventive devices sufficient to stop the erosion in the areas designated by the court.
The appellant contends that the court should have ordered a mandatory injunction requiring the appellee to construct preventive devices sufficient to stop the erosion throughout the length of its property line or, in any event, should have awarded to the appellant sufficient monies to do the necessary construction along the entire canal. The appellee argues that it cannot be held liable for damage to the appellant's property because there was no proof that it proximately caused any injury to the appellant. The appellee also asserts that appellant's claim is barred by the statute of limitations and laches. Finally, the appellee argues that even if liability is established the appellant has suffered no damages for appellee's trespass because the value of appellant's land has been enhanced by virtue of it having become waterfront property.
We will first discuss the question of appellee's liability because if the court was wrong here, there would be no need to consider the other issues. However, we find no error on this point. The witnesses generally agreed that the erosion was caused primarily by the wake of boats traversing the canal at high speed rather than by any inherent defect in the design or construction of the canal. Be that as it may, the appellant's claim is predicated upon the fact that appellee excavated a canal under circumstances where the southern shoreline would erode unless some sort of shoreline stabilization were installed. The continuing presence of boat wakes was certainly foreseeable, particularly since the admitted purpose of the canal was to carry boat traffic. See Concord Florida, Inc. v. Lewin, 341 So.2d 242 (Fla.3d DCA 1976); Leib v. City of Tampa, 326 So.2d 52 (Fla.2d DCA 1976). The evidence clearly supports the court's conclusion that the appellee's construction of the canal was proximately related to the continuing damage to appellant's property through erosion. Likewise, in view of the equivocal nature of the evidence as to when the canal began to erode into the appellant's land, we cannot say the court erred in rejecting the appellee's affirmative defenses of limitations and laches.
The more difficult questions relate to the relief awarded to the appellant. Since the court indicated that the appellant had made a case for injunctive relief, the appellant argues that it was error to direct the payment of a monetary sum in lieu thereof. Yet, it is well settled that the determination of whether to grant a mandatory injunction rests largely within the discretion of the trial court. State Road Dept. v. Newhall Drainage Dist., 54 So.2d 48 (Fla. 1951); Turk v. Hysan Products Co., 149 So.2d 584 (Fla.3d DCA 1963). The courts are seldom reversed for refusing to grant mandatory injunctions. See McDowell v. Trustees of the Internal Improvement Fund, 90 So.2d 715 (Fla. 1956). Had the court declined to grant appellant any relief, another question might be presented. Here, the court fashioned relief in the form of a monetary award, and in this factual situation there is considerable logic in such an approach.
On the other side of the coin, the appellee contends that once the court decided to deny the injunction, there was no alternative to dismissing the case because the appellant had already dropped its claims for damages caused by the trespass of appellee's canal.[1] Appellee further argues that even if the court was authorized to award damages, the court adopted an improper measure of damages. Ordinarily, the measure of damages for trespass is the difference in the value of the land before and after the trespass. Hutchinson v. Courtney, *237 86 Fla. 556, 98 So. 582 (1923). The only witness on comparative values testified that if appellant's land were adapted to its highest and best use, its value would be substantially increased by the construction of the canal regardless of the erosion, and that even its value for use as a golf course had been enhanced to some extent by virtue of the proximity of the water. Appellee suggests that, at the most, appellant was entitled to nominal damages.
We would find nothing wrong with the appellee's analysis if this were a simple suit claiming damages for trespass. However, the monetary amount was not an award of damages, as such, but was an alternative vehicle toward accomplishing without the need for court supervision what might have been obtained through a mandatory injunction. According to the testimony, there were three ways to stop the erosion. The first was to fill up the canal, the second was to close it off at each end, and the third was to construct some sort of device which would prevent further erosion from taking place. Thus, we believe it was within the court's prerogative to decline to grant a mandatory injunction and to require, in lieu thereof, the appellee to pay the appellant an amount of money sufficient to cover the costs reasonably necessary to prevent further erosion.
The method employed is somewhat analogous to relief sometimes granted when one has built a structure which slightly encroaches upon his neighbor's property. When the construction has been completed and there is no showing of intentional encroachment, the courts are reluctant to grant a mandatory injunction requiring the removal of the property because of the inordinate cost. Nevertheless, monetary awards have been entered against the encroaching party which are higher than the market values of the small portions of property which have been taken. The unspoken rationale for upholding these decisions seems to be that the encroaching party is in no position to complain since the result could have been worse. E.g., Graven v. Backus, 163 N.W.2d 320 (N.D. 1968); Oertel v. Copley, 152 Cal. App.2d 287, 313 P.2d 105 (1957); Drenkowski v. Goodman & Cook, 43 N.J. Super. 206, 128 A.2d 505 (Ch.Div. 1957). Here, at least the court attempted to tie in the monetary award to what it would cost to prevent further erosion.
We disagree with the judgment in only one particular. The court found that the erosion would continue to occur only in certain specified areas which approximated half the length of the canal.[2] The amount of the monetary award was predicated upon what the court believed it would cost to erect erosion preventing devices in these areas.[3] However, except for one specific location,[4] the undisputed testimony of the expert witnesses was to the effect that the canal would continue to erode along its entire length. One of the experts called by appellant said that the erosion would likely extend another fifty feet into the appellant's land. The appellee's expert only disagreed with respect to the length of time the bank might take to reach this point. Thus, there was no evidence in the record upon which the court could have concluded that the erosion will not continue except in those areas specifically designated, and the court's view of the property could not provide a foundation for these findings. Atlantic Coast Line R. Co. v. Hendry, 112 Fla. *238 391, 150 So. 598 (1933). In fact, one of the experts testified that the erection of separated seawalls in only those areas where the erosion was the worst would aggravate the erosion in the areas adjacent to those seawalls.
Accordingly, we affirm that part of the judgment which denies a mandatory injunction but awards to the appellant an amount equivalent to the cost of the construction necessary to abate the erosion problems caused by the canal. The case is remanded for a re-evaluation of the amount of the award so that it will cover the cost of preventing further erosion along the entire length of the canal except for the two areas specified in footnote 4. Since the testimony concerning the manner and cost of remedial construction seemed to be incidental to the issues to which the parties directed their attention at the original trial, the court should entertain further testimony concerning the cost of appropriate construction reasonably necessary to stop the erosion.
SCHEB and OTT, JJ., concur.
NOTES
[1] The counts for injunction which remained in the amended complaint did include a prayer for damages incident to the granting of injunctive relief. See McGriff v. McGill, 62 So.2d 28 (Fla. 1952); Winn & Lovett Grocery v. Saffold Brothers Produce Co., 121 Fla. 833, 164 So. 681 (1935).
[2] At the time of the trial the southern bank of the canal had eroded across the appellant's property line in nine separate places. The areas in which the court concluded that further erosion would occur bear some approximation to the locations in which the erosion had crossed the property line but do not seem to coincide in every instance.
[3] In response to a question from the court, one of the appellant's expert witnesses testified that it would probably cost from $35 to $50 a foot to erect a suitable seawall which would stop the erosion.
[4] In a specified area at the east end of the canal, sand has been carried against a short seawall and has been deposited at this location as accretion, thereby preventing erosion. There is also some erosion around the mouth of what appears to be an outlet drain crossing appellant's property which cannot be attributed to the appellee.