NORTHCUTT, Judge.
 

 The parties to a commercial landlord/tenant suit resolved the litigation by entering into a settlement agreement that required the landlord to make certain repairs. The tenant, dissatisfied with the repairs, eventually filed a motion to enforce the settlement agreement. The circuit court awarded the tenant over $28,000 even though it found that the tenant had failed to prove its claim for damages. We reverse the award and remand for further proceedings.
 

 Ted Legakis and Forrest Hills, L.L.C., are the landlords of a commercial building
 
 *902
 
 rented by George Loumpos.
 
 [1]
 
 In 2003, the parties entered into a multiyear lease agreement for the building to be used as a restaurant. The building had a five-ton, central air conditioner and a smaller, through-the-wall air conditioner. Apparently, the am conditioners never worked well, and eventually the air in the restaurant became unbearably hot. The tenant filed suit alleging that this problem, and others, constituted a breach of the lease. The suit sought damages and injunctive relief to require the landlord to make necessary repairs. The tenant also began withholding rent and depositing it in the registry of the court, which generated an eviction suit by the landlord.
 

 At mediation, the parties entered into a settlement agreement that stated in pertinent part: “TED LEGAKIS and FOREST HILLS, LLC, agree to replace the air conditioning system so that it is operating properly.” “The Landlord shall make its best efforts to complete the air conditioning repairs within thirty (30) days from the date of this Mediation Settlement Agreement.” The parties agreed that the court retained jurisdiction to enforce the agreement.
 

 In fairly short order the landlord replaced the outside condenser, but it made no other repairs to the air conditioning system. The tenant’s subsequent motion to enforce the settlement agreement alleged in part that the new unit was inadequate to properly cool the space and that the air handler, which had not been replaced, was not operating properly. The tenant also complained that the landlord refused to put in new air vents. The tenant sought damages, sanctions for the landlord’s breach of the settlement agreement, and an order directing the landlord to immediately comply with the terms of the settlement agreement.
 

 At an evidentiary hearing on the motion to enforce, the tenant testified that the heat inside the restaurant continued to be unbearable even after the landlord replaced the condenser. This testimony was corroborated both by a regular customer of the restaurant and by an expert hired by the tenant to evaluate the air conditioning system. The expert, an air conditioning consultant, prepared a report that was introduced into evidence. In his testimony he explained that a restaurant’s air conditioning system properly included the condenser, air handler, ducts, kitchen exhaust, and makeup air fan. Based on the building’s “heat load,” he recommended the installation of: two five-ton air conditioners (both condensers and air handlers), which would necessitate an upgraded electrical system; new ductwork; and a new exhaust hood and makeup air fan. The consultant had obtained estimates from contractors, and he testified that the total cost for his suggested improvements would be $28,295.
 

 The landlord generally did not object to the expert’s qualifications or testimony. Nor did the landlord call an expert. Instead, Legakis testified that he had complied with the settlement agreement by replacing the condenser. But he also acknowledged that when he entered into the settlement agreement, his “intention was to go ahead and rectify it, whether to repair it or replace it with a new condenser or the air handler or both.”
 

 The circuit court accepted the expert’s opinion as to the course of action necessary to meet the landlord’s obligation under the settlement agreement. But, rather than requiring one of the parties to install the system, the court simply award
 
 *903
 
 ed the estimated cost of the system to the tenant, to be paid from the lease payments that had accumulated in the court registry. This award was made despite the court’s finding that the tenant had failed to prove a claim for damages.
 

 The circuit court erred in awarding the money to the tenant without committing the funds to the improvement of the air conditioning system. The tenant sought an order directing the landlord to comply with the settlement agreement, the plain language of which required the landlord to improve the premises by remedying the air conditioning deficiencies. But the money was disbursed without regard to this requirement.
 

 At the hearing below, the circuit court expressed its reluctance to undertake responsibility for supervising future performance. It is true that mandatory injunctions are disfavored for this reason.
 
 Mayor’s Jewelers, Inc. v. State of Cal. Pub. Emps. ’ Ret. Sys.,
 
 685 So.2d 904, 905 (Fla. 4th DCA 1996) (citing
 
 Calumet Co. v. Oil City Carp.,
 
 114 Fla. 531, 154 So. 141 (1934)). And we recognize that the determination of whether to grant a mandatory injunction rests largely within the discretion of the trial court.
 
 Gasparilla Inn, Inc. v. Sunset Realty Corp.,
 
 358 So.2d 234, 236 (Fla. 2d DCA 1978).
 

 But a mandatory injunction is proper where a clear legal right has been violated, irreparable harm has been threatened, and there is a lack of an adequate remedy at law.
 
 Shaw v. Tampa Electric Co.,
 
 949 So.2d 1066, 1069 (Fla. 2d DCA 2007) (quoting
 
 Dep’t of Health & Rehabilitative Sens. v. Weinstein,
 
 447 So.2d 345, 345 (Fla. 4th DCA 1984)). A clear legal right was shown by the evidence supporting the court’s conclusion that the settlement agreement required the landlord to replace or repair the restaurant’s air conditioning. In analogous circumstances, irreparable harm sufficient to justify a mandatory injunction has been found when a restaurant tenant was unable to operate without installing a kitchen exhaust vent and fan but the landlord was preventing the installation.
 
 Second on Second Cafe, Inc. v. Hing Sing Trading, Inc.,
 
 66 A.D.3d 255, 884 N.Y.S.2d 353, 366 (N.Y.App.Div.2009).
 

 In this case, the circuit court had a number of available options for enforcing the landlord’s obligation — for example, allowing the tenant to arrange for the work at the landlord’s expense, with the court’s involvement limited to disbursing sums from the registry upon proper documentation of the costs incurred to make the necessary repairs.
 
 See
 
 § 713.10, Fla. Stat. (2008) (permitting a construction lien on leased property “[w]hen an improvement is made by a lessee in accordance with an agreement between such lessee and her or his lessor”); § 83.201, Fla. Stat. (2008) (providing that commercial tenant’s remedy under this chapter, where premises are wholly untenantable, was cumulative to other remedies);
 
 see also Lincoln Tower Corp. v. Richter’s Jewelry Co.,
 
 152 Fla. 542, 12 So.2d 452, 454 (1943) (noting that tenant could receive credit against rent for making certain repair of leased property). Here, though, the tenant was given an improper windfall in the form of a monetary award without a corresponding obligation to apply the funds to the building’s improvement. Accordingly, we reverse.
 

 We affirm without comment the attorney’s fee issue raised by the tenant in the cross-appeal.
 

 Affirmed in part, reversed in part, and remanded for further proceedings.
 

 ALTENBERND, J., and CASE, JAMES R., Associate Judge, Concur.
 

 [1]
 

 . During the suit, George Loumpos died, and his wife as personal representative of his estate was substituted.