NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JOHN AMELIO and ANNEMARIE )
AMELIO, )
)
     Appellants, )
)
v. )    Case No. 2D14-5596
)
MARILYN PINES UNIT II CONDOMINIUM )
ASSOCIATION, INC., )
)
     Appellee. )
_____ )

Opinion filed July 15, 2015.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Pinellas County;
Walter L. Schafer, Jr., Judge.

Lee L. Haas of Haas & Castillo, P.A.,
Clearwater, for Appellants.

H. Vance Smith of Kadyk & Delesie,
P.A., Tampa, for Appellee.

SILBERMAN, Judge.

        John and Annemarie Amelio (the Amelios) own a ground floor

condominium unit that has been plagued by excess moisture coming through the slab

on which their unit sits. The Amelios filed suit for injunctive relief and damages,

claiming that Marilyn Pines Unit II Condominium Association, Inc. (the Association), has

failed to perform its obligations to maintain and repair the slab in order to stop the

moisture intrusion. They appeal the nonfinal order that denies their request for a mandatory injunction against the Association. We conclude that the Amelios have satisfied the requirements to obtain a mandatory injunction and that an injunction is appropriate under the circumstances of this case. Accordingly, we reverse.

In 2010, the Amelios observed excessive moisture in their condominium unit, which was causing damage to the unit and its contents. They reported the problem to the Association, which then brought in a leak detection service. In December 2010, that company ran tests and determined that there was excessive moisture in the slab which was not caused by a plumbing, air conditioning, or other leak. In March 2011, the Association hired an engineering firm to inspect the floor slab and recommend potential repair options. The engineering firm recommended the installation of a moisture barrier on the slab and an exterior drainage system.

Immediately following the engineering firm's recommendation, the Association's attorney sent a letter to the Association's board of directors notifying the board that it is the Association's responsibility to fix any issues with the floor slab. In December 2011, the Association hired a different engineering firm to draw up plans for an exterior drainage system. The drainage system was not completed until more than a year later in early 2013. But even after the drainage system was installed high moisture levels remained in the slab and moisture intrusion continued in the Amelios' unit.

The Association rehired the original engineering firm to perform another inspection. The engineering firm issued a report in April 2013, again recommending that a moisture barrier be placed on the concrete slab. The Association hired a company to install the moisture barrier, but it was not installed in accordance with the

engineering firm's specifications and, although disputed, the concrete slab may have been too soft and powdery for the barrier to be effective. The Association failed to take further steps to resolve the problem. The Amelios' unit continues to be damaged as a result of ongoing moisture intrusion and is uninhabitable.

The Amelios sought a mandatory injunction to compel the Association to resolve the moisture problem in the slab. They also sought compensation for damage to their condominium unit, damage to their personal property, and for loss of use of the unit. The circuit court bifurcated the injunction and damages claims and conducted a nonjury trial as to injunctive relief. The court found that the Amelios failed to demonstrate that they had no adequate remedy at law and denied injunctive relief.

Injunctive relief is specifically authorized by statute in cases brought by unit owners against condominium associations for their failure to perform obligations as required by the condominium documents. § 718.303(1), Fla. Stat. (2011); see Abbey Park Homeowners Ass'n v. Bowen, 508 So. 2d 554, 555 (Fla. 4th DCA 1987). In order to establish entitlement to a mandatory injunction there must be a clear legal right which has been violated, irreparable harm must be threatened, and there must be a lack of an adequate remedy at law. Shaw v. Tampa Elec. Co., 949 So. 2d 1066, 1069 (Fla. 2d DCA 2007). The Amelios contend that the evidence at trial established these elements. We agree.

First, to establish entitlement to a mandatory injunction, a movant must establish that "a clear legal right has been violated." Legakis v. Loumpos, 40 So. 3d 901, 903 (Fla. 2d DCA 2010). In this case, the declaration of condominium governs the parties' rights. Section 5.2(a) states:

- 3 -

(a) BY ASSOCIATION. The Association shall maintain, repair and replace as a common expense of the apartment buildings containing an apartment:

(1) All portions of the apartment contributing to the support of the apartment building, which portions shall include but not be limited to the outside walls of the apartment buildings and all fixtures on the exterior thereof, boundary walls of the apartment, floors and ceiling slabs, loadbearing columns, and loadbearing walls, but shall not include screening, windows, exterior doors, glass, and interior surfaces of walls, ceilings and floors.

. . . .

(3) All incidental damage caused to an apartment by such work shall be promptly repaired by the Association.

(Emphasis added.) Section 5.2(b)(1) states:

(b) BY THE APARTMENT OWNER. The responsibility of the apartment owner shall include:

(1) To maintain, repair, and replace at his sole and personal expense . . . interior surfaces of all walls, including boundary and exterior walls, floors and ceilings . . . except the portions specifically to be maintained, repaired and replaced by the Association.

(Emphasis added.) Finally, section 5.2(c) states:

(c) ALTERATION AND IMPROVEMENT. Subject to the other provisions of 5.2, and which in all cases shall supersede and have the priority over the provisions of this section when in conflict therewith, an apartment owner may make such alteration or improvement to the apartment at his sole and personal cost as he may be advised, provided all work shall be done without disturbing the rights of other apartment owners and further provided that an apartment owner shall make no changes or alterations to any interior boundary wall, exterior wall, balcony or patio, screening, exterior door, windows, awnings, structural or loadbearing member, electrical service or plumbing service, without first obtaining approval in writing of owners of all other apartments in such apartment building and the approval of

- 4 -

> the board of directors of the Association, with compliance to
> all existing building codes.

(Emphasis added.) While the Amelios have a duty to maintain and repair the interior surfaces of their unit, they are not entitled to unilaterally make any changes or alterations to any structural or loadbearing member of the unit, including the slab. Rather, it is the Association's duty to maintain and repair the floor slab. Because the evidence has shown that moisture was coming from outside the Amelios' unit through the floor slab and that the Association has failed to resolve the problem, the Amelios have established that they possess a clear legal right to have the Association repair the slab.

The second element a movant must establish for a mandatory injunction is that irreparable harm is threatened. Legakis, 40 So. 3d at 903; Shaw, 949 So. 2d at 1069. Under section 718.303(1), the requirement of irreparable harm is satisfied when a violation of chapter 718 is shown. Hobbs v. Weinkauf, 940 So. 2d 1151, 1153 (Fla. 2d DCA 2006); Hollywood Towers Condo. Ass'n, Inc. v. Hampton, 40 So. 3d 784, 788 (Fla. 4th DCA 2010). Similarly, irreparable harm is shown by the ongoing violation of the obligations contained in condominium documents, whose violation is prohibited by statute. See Briarwinds Condo. Ass'n, Inc. v. Rigsby, 51 So. 3d 532, 533 (Fla. 3d DCA 2010).

Moreover, the evidence established irreparable harm based on the moisture in and coming through the slab, resulting in excessive moisture in the unit, damaging the unit and making it uninhabitable. The problem goes deeper than just the slab's surface, and the Association's efforts to cover the surface and install exterior drains have been unsuccessful. The Amelios have no ability to remedy this problem as

they have no unilateral right under the declaration of condominium to maintain, repair, or replace the floor slab. Rather, the right and obligation to address slab problems is that of the Association. These facts establish the required element of irreparable harm.

The third element a movant must show is that the movant does not possess an adequate remedy at law. Legakis, 40 So. 3d at 903; Shaw, 949 So. 2d at 1069. If monetary damages would fully compensate a loss, then this element is not established. Hiles v. Auto Bahn Fed'n, Inc., 498 So. 2d 997, 998 (Fla. 4th DCA 1986). Here, the circuit court found that there was an adequate remedy at law but failed to state any reasoning behind its decision. Presumably, the court concluded that the Amelios' claim for damages would provide them an adequate remedy. However, the evidence does not support this finding.

The Amelios have established that the problem is with the floor slab itself, and there was no evidence that the Amelios caused the water intrusion or failed to prevent it. Under section 5.2 of the declaration, the duty to repair the slab rests exclusively with the Association. The Association has failed to present any evidence that it would be impossible for the Association to perform the necessary repairs to the slab. And because the Association has the exclusive duty to make repairs to the slab, the Amelios cannot make the repairs and obtain reimbursement from the Association for those repairs.

Significantly, until the repairs are made the unit will continue to be damaged and uninhabitable. And a monetary award will not fix the problem as the Amelios do not have the right to maintain, repair, or replace the slab. Based on the evidence presented at trial, there is nothing to support the conclusion that a monetary

award would be an adequate remedy for the Association's ongoing failure to properly and timely address the problem. Thus, because of the Association's failure to perform, an injunction is warranted to compel the Association to fulfill its obligation to repair. See § 718.303(1); Legakis, 40 So. 3d at 903 (noting that a mandatory injunction is appropriate to require a landlord to replace or repair the air conditioning in a tenant's restaurant as required by the parties' agreement).

We note the Association's contention that a mandatory injunction would perpetually compel the Association to maintain the common elements for an unspecified duration. See Abbey Park, 508 So. 2d at 555; Florida Jai Alai, Inc. v. S. Catering Servs., Inc., 388 So. 2d 1076, 1078 (Fla. 5th DCA 1980). But the Association seems to ignore that it is already obligated under the condominium documents to maintain the common elements, including the slab. Based on the evidence presented, it appears that once the problem at hand is resolved by appropriate repairs, an injunction should no longer be required.

The Amelios have met their burden on each of the necessary requirements for a mandatory injunction. The Amelios have a clear legal right which the Association has violated, they have suffered irreparable harm as a result of the continuing violation, and they have no adequate remedy at law in the face of the Association's ongoing failure to perform its obligation. For these reasons the circuit court erred in denying the Amelios' motion for a mandatory injunction. We reverse the order denying the mandatory injunction and remand this case for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings.

MORRIS, J., Concurs.
LUCAS, J., Concurs with opinion.

LUCAS, Judge, Concurring specially.

I concur with the decision to reverse the circuit court's order but write separately because I believe mandatory injunctive relief—and all that it will entail—is warranted here only because section 718.303(1), Florida Statutes (2011), authorizes this extraordinary civil remedy in cases such as this one.

From the record it appears that the Amelios have suffered some degree of moisture intrusion in their condominium unit for the past several years as a result of some problem, yet to be definitively diagnosed, with their building's floor slab. Whatever the exact source of the problem may be, the Amelios have, thus far, been unsatisfied with the attempts to repair it, and so they sought relief in court. Among their claims for relief, the Amelios asked for a mandatory injunction to compel their condominium association to undertake a proper repair of the slab, whatever that may be. The conflicting causation evidence presented at this bifurcated nonjury trial, were it in a context other than a condominium, would seem to present a difficult case for mandatory injunctive relief. Cf. Dade Enters. v. Wometco Theatres, 160 So. 209, 214 (Fla. 1935) ("It is a rule of general application in injunction cases that an injunction should not be granted where there is substantial dispute as to the legal rights involved and the right of complainant is doubtful, or is not clear, or is questioned on every ground on which he puts it, not only by the answer of the defendant, but by the proofs in the cause."); Foreclosure FreeSearch, Inc. v. Sullivan, 12 So. 3d 771, 774-75 (Fla. 4th DCA 2009)

- 8 -

("Although a trial court has broad discretion in granting injunctive relief, it is an extraordinary remedy that 'requires a clear legal right, free from reasonable doubt.' " (quoting Net First Nat'l Bank v. First Telebanc Corp., 834 So. 2d 944, 950 (Fla. 4th DCA 2003))).

However, as the majority correctly notes, the Association is required under a recorded condominium declaration to repair the floor slab as part of its common maintenance obligations. Furthermore, section 718.303(1) expressly provides condominium owners such as the Amelios with an avenue to obtain injunctive relief against a condominium association for violations of recorded condominium declarations. With that recorded obligation and statutory authority, and in light of the evidence that the slab of this building is in some kind of disrepair which the Amelios are incapable of remedying, the circuit court's denial of injunctive relief was improper. See Hobbs v. Weinkauf, 940 So. 2d 1151, 1153 (Fla. 2d DCA 2006) ("A violation of the requirements of chapter 718 is itself a harm for which section 718.303 authorizes injunctive relief. The statute requires no additional showing of harm.").

The Association raises a valid point about the rare and extraordinary nature of mandatory injunctive relief that bears repeating. See Johnson v. Killian, 27 So. 2d 345, 347 (Fla. 1946) (stating that the "drastic" remedy of injunctive relief should be granted "cautiously and sparingly," particularly when it is mandatory, because mandatory injunctions are looked upon with disfavor); Grant v. GHG014, LLC, 65 So. 3d 1066, 1067 (Fla. 4th DCA 2010) ("Mandatory injunctions, which compel an affirmative action by the party enjoined, are looked upon with disfavor, and the courts are even more reluctant to issue them than prohibitory ones."). And, it must be conceded, the

entry of a mandatory injunction that necessitates ongoing judicial monitoring presents unique challenges as it distends the traditional role of a court as an arbiter of disputes; such injunctions must be carefully crafted so that they have definitive limits and are not perpetual. Collins v. Pic-Town Water Works, Inc., 166 So. 2d 760, 762 (Fla. 2d DCA 1964); Abbey Park Homeowners Ass'n v. Bowen, 508 So. 2d 554, 555 (Fla. 4th DCA 1987). Just as we would never wish to put a court "in the business of managing a shopping center," Mayor's Jewelers, Inc. v. California Pub. Emps. Ret. Sys., 685 So. 2d 904, 905 (Fla. 4th DCA 1996) (quoting New Park Forest Assocs. II v. Rogers Enters., Inc., 552 N.E. 2d 1215, 1220 (Ill. App. Ct. 1990)), we should be loath to make a circuit judge into a construction site supervisor. But these arguments must fail in the face of a statute that authorizes this equitable remedy under these facts.

For that reason, I concur.