DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CASTILLO GRAND RESIDENCES CONDOMINIUM ASSOCIATION, INC.,**
and **CWI-GG RCFL PROPERTY OWNER, LLC,**
Appellants,

v.

**DAVID J. STERN,**
Appellee.

Nos. 4D20-104 and 4D20-172

[October 21, 2020]

Consolidated appeals of nonfinal orders from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Raag Singhal, Judge; L.T. Case No. CACE-18-002617.

Therese A. Savona of Cole, Scott & Kissane, P.A., Orlando, and Gerard A. Tuzzio and Krystal Kozma of Roberts, Reynolds, Bedard & Tuzzio, PLLC, Coral Springs, for appellants.

Raquel M. Fernandez of Bilzin Sumberg Baena Price & Axelrod LLP, Miami, for appellee.

CONNER, J.

In this consolidated appeal, Castillo Grand Residences Condominium Association, Inc. ("the Association") and CWI-GG RCFL Property Owner, LLC ("the Hotel Owner") appeal a temporary injunction in favor of condominium unit owner David Stern ("the Appellee"). The Association and the Hotel Owner (collectively, "the Appellants") contend on appeal that the temporary injunction is defective because it: (1) is facially deficient; (2) does not require the posting of a bond; and (3) is based on alleged facts that are insufficient to support the required elements of a temporary injunction. We agree that the temporary injunction does not sufficiently specify the factual reasons for its entry or describe in reasonable detail the actions required to comply with the injunction. The temporary injunction also fails to require the posting of a bond. For those reasons, we reverse the trial court and remand for further proceedings.

*Background*

The Castillo Grand Residences is a condominium complex consisting of the top eight floors of a building which houses a hotel owned by the Hotel Owner on the seventeen floors below. The Appellee owns and lives in a residential unit in the condominium complex. The Association governs the Castillo Grand Residences condominium. The recorded condominium declaration includes provisions for the maintenance and repair of the complex, delineating the responsibilities of the Association, the Hotel Owner, and the individual unit owners.

The Appellee filed a complaint against the Appellants alleging that he suffered water intrusion into his home. He claimed that the Appellants neglected necessary maintenance and repairs to the common elements, including the roof. He asserted that they chose "quick and cheap fixes" which failed to remedy the water intrusion into his unit. He further alleged that he has been forced to vacate his unit to avoid exposure to toxic black mold. His complaint contained counts for breach of contract, negligence, declaratory relief, and mandatory injunction. The count for mandatory injunction alleged he had no adequate remedy at law because the condominium declaration precludes individual unit owners from altering or repairing the common elements and exterior surface of the building, which is required to adequately repair the water intrusion into his unit. He asserted that unless repair was ordered, he would be forced to continue to spend money to no avail to comply with the mold remediation obligations of individual unit owners under the condominium declaration.

Although the trial court dismissed the count for mandatory injunction, the Appellee subsequently moved for injunctive relief to compel performance by the Appellants of "maintenance and repairs needed to address and resolve water intrusion and mold within his" unit and surrounding common elements and exterior.

Section 17.1.1 of the condominium declaration addresses the maintenance and repair obligations of individual unit owners, stating in part:

> *Each Owner* shall maintain in good condition, *repair and replace* at his/her expense all portions of his/her Dwelling Unit *all window panes, window screens and all interior surfaces within or surrounding his/her Dwelling Unit* (such as the surfaces of the walls, ceilings and floors), and *the glass in all exterior doors*, maintain and repair the fixtures therein, including *the air conditioning equipment*; and pay for any

2

utilities which are separately metered to his/her Dwelling Unit.

(emphases added).

Section 17.2.1 of the declaration sets forth the responsibilities of the Association and the Hotel Owner for maintenance and repairs:

> *The Association* shall maintain, repair and replace as necessary *all of the Common Elements*, including the carpeting, paint and wallpaper in the hallways, *the exterior of doors to Dwelling Units leading to the hallways*, the three (3) elevators which service the Condominium, and the Condominium lobby. The *Hotel Owner* and not the Association shall be responsible for *maintaining the exterior surfaces of the Building, including the roof, the balconies and terraces, the windows, and the doors leading to the balconies and terraces as such components are Shared Facilities* and the expenses associated with such Shared Facilities shall be a Shared Expense as set forth in Exhibit "D" of the Master Declaration.

(emphases added).

"Common Elements" is defined in the Association's Bylaws as "the portion of the Condominium Property not included in the Dwelling Units."

The trial court held a two-day hearing on the motion for injunction. After considering the evidence, the trial court was satisfied that the Appellants had been and continued to be willing to resolve the water intrusion problem, but in fact, there were numerous and on-going problems for a protracted period of time and the problems were not completely resolved. In particular, the trial court found "there were two separate issues, not caused by [the Appellee]" that needed repair.

The trial court found *Amelio v. Marilyn Pines Unit II Condo. Ass'n, Inc.*, 173 So. 3d 1037, 1041 (Fla. 2d DCA 2015), to be instructive and quoted the following from it in the injunction order:

> Significantly, until the repairs are made the unit will continue to be damaged and uninhabitable. And a monetary award will not fix the problem as the Amelios do not have the right to maintain, repair, or replace the slab. Based on the evidence presented at trial, there is nothing to support the conclusion

3

that a monetary award would be an adequate remedy for the Association's ongoing failure to properly and timely address the problem. Thus, because of the Association's failure to perform, an injunction is warranted to compel the Association to fulfill its obligation to repair. *See* § 718.303(1); *Legakis* [*v. Loumpos*, 40 So. 3d 901, 903 (Fla. 2d DCA 2010)], (noting that a mandatory injunction is appropriate to require a landlord to replace or repair the air conditioning in a tenant's restaurant as required by the parties' agreement).

We note the Association's contention that a mandatory injunction would perpetually compel the Association to maintain the common elements for an unspecified duration. *See Abbey Park* [*Homeowners Ass'n v. Bowen*, 508 So. 2d 554, 555 (Fla. 4th DCA 1987)]; *Florida Jai Alai, Inc. v. S. Catering Servs., Inc.*, 388 So. 2d 1076, 1078 (Fla. 5th DCA 1980). But the Association seems to ignore that it is already obligated under the condominium documents to maintain the common elements, including the slab. Based on the evidence presented, it appears that once the problem at hand is resolved by appropriate repairs, an injunction should no longer be required.

Relying on *Amelio*, the trial court granted injunctive relief by ordering that: "[The Appellants] shall inspect, repair, and maintain [the Appellee]'s condominium residence to correct water intrusion and mold problems as pled in the Motion." No further actions for compliance are described.

The Appellants gave notice of appeal.

*Appellate Analysis*

"The standard of review of trial court orders on requests for temporary injunctions is hybrid. To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review." *Fla. High Sch. Athletic Ass'n v. Rosenberg ex rel. Rosenberg*, 117 So. 3d 825, 826 (Fla. 4th DCA 2013) (quoting *Foreclosure FreeSearch, Inc. v. Sullivan*, 12 So. 3d 771, 774 (Fla. 4th DCA 2009)). Review of the trial court's interpretation of a contract is also de novo. *See Rosenstein v. Rosenstein*, 976 So. 2d 1148, 1149 (Fla. 4th DCA 2008). An order on temporary injunction is presumed to be correct, "and will be reversed 'only upon a showing of a clear abuse of discretion or clearly improper ruling.'" *E.-Racer Tech, LLC v. Office of Attorney Gen. Dep't. of Legal Affairs*, 198 So.

3d 1107, 1109 (Fla. 4th DCA 2016) (quoting *M.G.K. Partners v. Cavallo*, 515 So. 2d 368, 369 (Fla. 4th DCA 1987)).

"For temporary injunctive relief, a movant must demonstrate: (1) irreparable harm would result if the relief is not granted; (2) an adequate remedy at law is unavailable; (3) a substantial likelihood of success on the merits; and (4) entry of the temporary injunction will serve the public interest." *Dubner v. Ferraro*, 242 So. 3d 444, 447 (Fla. 4th DCA 2018). "'Clear, definite, and unequivocally sufficient factual findings' must support each of these four criteria before the court may enter the injunction." *Wade v. Brown*, 928 So. 2d 1260, 1261 (Fla. 4th DCA 2006) (quoting *Aerospace Welding, Inc. v. Southstream Exhaust & Welding, Inc.*, 824 So. 2d 226, 227 (Fla. 4th DCA 2002)).

Florida Rule of Civil Procedure 1.610(c), governing injunctions, provides:

> Every injunction shall *specify the reasons for entry, shall describe in reasonable detail the act or acts restrained without reference to a pleading or another document*, and shall be binding on the parties to the action, their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction.

Fla. R. Civ. P. 1.610(c) (emphasis added). "Strict compliance with Florida Rule of Civil Procedure 1.610(c), which specifies the form and scope of injunctions, is required." *Eldon v. Perrin*, 78 So. 3d 737, 738 (Fla. 4th DCA 2012).

We agree with the Appellee that the trial court was presented with sufficient evidence to make a finding that "the water intrusion . . . has been ongoing for a protracted period of time" and that "there were two separate issues, not caused by [the Appellee]" that have caused water intrusion. However, we also agree with the Appellants' arguments that the temporary injunction is deficient in that it does not contain sufficient factual findings specifying the reason for entry of the injunction, nor does it describe with reasonable detail the act or acts required to comply with the injunction. Instead, the injunction improperly relies on reference to *Amelio* to explain the reasons for entry of the injunction, and it improperly relies on the motion to explain what acts are needed to comply with the injunction. To comply with rule 1.610(c), the injunction must identify more specifically the "two separate issues" causing the water intrusion. Additionally, the order granting the injunctive relief fails to give specific

details of what steps need to be taken "to correct water intrusion and mold problems *as pled in the Motion*," violating the provision of rule 1.610(c) that the injunction "*describe in reasonable detail the act or acts restrained without reference to a pleading or another document.*"[1]  Fla. R. Civ. P. 1.610(c) (emphasis added).

We also agree with Appellants' argument that the trial court erred when it failed to require a bond.  Subsection (b) of rule 1.610 requires a bond: "No temporary injunction shall be entered unless a bond is given by the movant in an amount the court deems proper, conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined." Fla. R. Civ. P. 1.610(b).  "An injunction is defective if it does not require the movant to post a bond.  'The trial court cannot waive this requirement nor can it comply by setting a nominal amount.'" *Fla. High Sch. Activities Ass'n v. Mander ex rel. Mander*, 932 So. 2d 314, 315–16 (Fla. 2d DCA 2006) (quoting *Bellach v. Huggs of Naples, Inc.*, 704 So. 2d 679, 680 (Fla. 2d DCA 1997)).  The requirement of a bond can be waived by both sides or on other grounds.  *See Dubner*, 242 So. 3d at 447-48 (recognizing that "a bond is ordinarily required for a temporary mandatory injunction absent evidence of financial inability to maintain a bond, agreement of both sides, or any other recognized ground."). However, there was no waiver of bond in this case or facts to support grounds for not imposing a bond.

For the above reasons, we reverse the order granting injunctive relief and remand to the trial court for the entry of a temporary injunction that complies with the requirements of rule 1.610 regarding sufficient factual determinations and description of relief granted, as well as a sufficient bond.

*Reversed and remanded for further proceedings.*

WARNER and DAMOORGIAN, JJ., concur.

---

[1] As argued by the Appellants, the evidence does not clearly reveal the source of the water intrusion, and the problem in this case is that two different entities are responsible for maintenance and repairs to different components of the common elements.  We assume that the trial court intended both Appellants to be jointly responsible for inspecting the common elements to determine the source or sources of the water intrusion into the Appellee's unit.  Presumably, once the source of the problem is identified, the responsibility for the repair, as between the Appellants, will become clear.  The injunction needs to specify more details of the acts required for compliance.

\* \* \*

*Not final until disposition of timely filed motion for rehearing.*